MILLER (LYALL v.). See Case No. 8,613.

MILLER (LYELL v.). See Case No. 8,620.

MILLER (McCLEAN v.). See Case No. 8,692.

## Case No. 9,581.

### MILLER v. McELROY.

[2 Pa. Law J. 305; 1 Am. Law Reg. 198; 1 Pa. Law J. Rep. 326.]

Circuit Court, E. D. Pennsylvania. Oct., 1839.

COPYRIGHT — PRELIMINARY INJUNCTION — DOUBTS OF VALIDITY—DEFENDANT SOLVENT.

[The court will not grant a preliminary injunction to restrain the publication and circulation of a work claimed to be an infringement of the plaintiff's copyright in a case where there is no reason to believe that the defendant will not be able to meet any damages which might be assessed against him upon final hearing, and also where there are grave doubts as to the validity of the plaintiff's copyright, as well as to the infringement complained of.]

At law.

Before HOPKINSON, District Judge.

An action was tried, a few months since, in the courts of Pennsylvania, in which "the commonwealth, at the suggestion of James Todd and others, was plaintiff, and Ashbel Green and others, defendants." [4 Whart. 531.] From the nature of the controversy, the importance of the judgment that might be rendered, and the number and respectability of the persons interested in it, the trial produced an extraordinary excitement. The parties were respectively desirous to have a report of the trial for publication, and persons were accordingly employed by each of them to make a report of the proceedings before the court. These reports were published a short time since, each in an octavo volume, within three or four days of each other. If both are true and faithful, they cannot substantially differ from each other, as they both profess to give an account of the same proceedings. The report made on the part of the defendants was prepared by the complainant in the bill now before this court, Samuel Miller, Jr. Esq.; the other report was made or published by the respondent, Archibald M'Elroy. The bill among other things, prays that an injunction may issue from this court against Archibald M'Elroy, to restrain him from printing, publishing, selling, or otherwise disposing of the parts of his said report, or book, which the complainant charges to be for the most part, very nearly in the same words or of the same purport and effect as certain parts of the work of, or report printed and published by the complainant, who alleges, that it is absolutely impossible that the said parts of the work so published by the said Archibald M'Elroy, should be so nearly in the same words, or of the same purport and effect as the said parts of the complainant's work, if the former had been prepared from original notes, taken by the said Archibald M'Elroy, and had not been copied more or less literally from the latter. The affidavit which accompanies the bill, repeats and affirms these allegations. On the 28th day of last March, the complainant entered in the clerk's office of the district court of the United States, the title of his book, as follows:—"Report of the Presbyterian Church Case. The Commonwealth of Pennsylvania, ex relatione James Todd and others, v. Ashbel Green and others. By a Member of the Philadelphia Bar." It is agreed that the verdict of the jury was rendered on the 26th of March. At the time when this title page was deposited with the clerk, the book was not printed, nor was the manuscript arranged or prepared for printing and publication, although the materials were in the hands of the complainant, the author and reporter. The publication was not made for several months after, as has been already stated.

In addition to these facts, it appears further, by the bill and affidavit, that some months before the publication of the complainant's book, he had printed several copies of certain parts of it, as a paper book for the use of the counsel, who argued the motion for a new trial, and of the judges, before whom that motion was argued, but that these copies were printed after the complainant had deposited the title of his book in the clerk's office; that these paper books were never published or exposed to sale by the complainant, or by any one on his account, or by his permission or order; but that such publication and sale were by him strictly prohibited. It is further stated, or agreed, that the whole of the contents of the volume or book of the complainant, with those parts of it now charged to have been taken from him by the respondent, were printed and published in a certain weekly paper, printed and published in the city of Philadelphia, by William S. Martien, entitled the "Presbyterian," in eleven successive numbers, by the verbal permission of the complainant; which publication was also made after the title of the book had been deposited in the clerk's office, but a considerable time before the printing and publishing of the book. The bill and affidavit allege that the parts of the work of the respondent complained of were taken from the said paper books, and from

the said newspaper. No allegation is made that any parts of the said book or report of the respondent were taken or copied from the book of the complainant, the title page of which he had deposited in the clerk's office, nor that the said book was in any manner used by the respondent in making his report. Indeed it could not be so, as the two books were published almost simultaneously. The complaint is distinctly, that the parts of the respondent's report, which are claimed to be the work and property of the complainant, were taken from certain paper books he had printed for the purposes mentioned, and from certain public newspapers, in which his report had been published with his consent.

Putting, for the present, the paper books printed for a special purpose, and in some degree confidential, out of the case, the publication by the complainant of his work in a newspaper, for which there was no copyright, circulated probably in every state of the Union, and was the property of every one who paid for it, presents some very important, and, as I believe, novel questions. I presume they are so, as neither the industry of the counsel concerned in the argument, which has been conspicuous, nor my own research, has found any judicial answers to them. They are these: 1st. Whether an author, who gives his work to the public by printing and publishing it in a public paper, not protected by any copyright, can have such a right in the same work, by afterwards publishing it in a different form, as in a volume or book. 2d. Whether an author, by depositing in the clerk's office a title page, when the work it is intended for was not then printed, nor written, nor the manuscript prepared for printing and publication, although the notes or materials were in the hands of the author, from which the work or book was to be, and afterwards actually was composed, may have a copyright of the work, so afterwards prepared and composed, by affixing to it the title page so deposited? Lastly, which seems to me to press clearly upon this case—3d. Supposing the two points mentioned to be answered affirmatively in favour of the author, and that a book so secured, by depositing the title page as aforesaid, is protected from violation, and that no man can re-print and publish it, or any part of it, without the permission of the author; yet the question remains, whether one can be charged with an infringement upon this right, if he has, in fact, never seen or copied from the book so entered and secured—or in any manner used it in his publication, but has re-printed the same matter, in part or in whole, from a public newspaper in which he found it, where the author had himself published it, and in which paper neither the author nor any other had any copyright? 4th. Whether the notice given in some of the papers of the copyright, as stated in the affidavit, can help the complainant?

These are grave questions, not to be decided on a preliminary inquiry and argument; but to be left without prejudice, to the full and final hearing of the case. If, on that hearing, the complainant shall sustain his case and complaint, he will recover a judgment to compensate him for the wrong he has suffered, and I have no reason to believe, that the respondent will not be able to answer it. In the case of Ogle v. Ege [Case No. 10,462], on a prayer for an injunction, Judge Washington says: "If there appear a reasonable doubt as to the plaintiff's right, or the validity of his patent, the court will require the plaintiff to try his title at law."

Other questions were raised on this argument, such as, that the title of the book is not the same with that deposited in the office; and that the affidavit in charging the infringement is not direct but argumentative, which it is unnecessary for me to notice at this time. It is my desire and intention to keep myself free and open upon all the points that may hereafter be presented to my judgment in the case. Were I to grant the injunction, I should decide the questions I have stated, as well as others, affirmatively for the complainant. I am not now prepared to do this, whatever may be my opinion hereafter. The parties will come to the final hearing on their respective rights, without prejudication of any of them. The injunction is refused.